IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIA D. SOTO PEREZ                  :        CIVIL ACTION
                                     :
          v.                         :
                                     :
MICHAEL J. ASTRUE,[1]                :
Commissioner of Social Security      :        NO. 06-4518

## REPORT AND RECOMMENDATION

L.  FELIPE RESTREPO                                      OCTOBER 22, 2007
UNITED STATES MAGISTRATE JUDGE

      Plaintiff, Maria D. Soto Perez, filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and

405(g) for review of the final decision of the Commissioner of Social Security

("Commissioner"), who found that plaintiff was not eligible for Supplemental Security Income

("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f.  Presently

before the Court is plaintiff's motion for summary judgment and defendant Commissioner's

Response to plaintiff's request for review.  For the reasons which follow, plaintiff's motion for

summary judgment should be granted.


      1.    PROCEDURAL HISTORY

      Plaintiff filed an application for SSI with a protective filing date of October 21, 2004.

(R. 82-83.)  Her application was denied initially by the Social Security Administration ("SSA"),

(R. 35-39), and she thereafter requested an administrative hearing, (R.  32-34).  An

_____

      [1]Michael J. Astrue became the Commissioner of the Social Security Administration
effective Feb. 12, 2007.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), he is
automatically substituted as the defendant in this action.

administrative law judge ("ALJ"), Peter Train, held a hearing on November 10, 2005.  (R.  254-277.)  At the hearing, the ALJ heard testimony from plaintiff and Brian Bierly, a vocational expert ("VE").  (R. 254-277.)  Plaintiff speaks very little English, (R. 256-57), and Marisa Flores-Veloz was present as an interpreter.  (R. 43, 256).  However, the hearing transcript does not reveal the extent to which the proceedings were being interpreted.  (R.  256-277).  Following the hearing, the ALJ issued a decision denying plaintiff's claim for benefits.  (R.  13-25.)  The Appeals Council denied her request for review, (R. 6-10), and plaintiff then initiated this action seeking review of the ALJ's decision.

In support of her summary judgment motion, plaintiff alleges that the ALJ "erred in assessing the severity of [plaintiff's] impairments."  See Pl.'s Br. at 5.  Additionally, she alleges that the ALJ improperly found her testimony and subjective complaints not credible.  Id. at 7.

In his Response, the Commissioner alleges that substantial evidence supports the ALJ's residual functional capacity ("RFC") determination and credibility findings.  See Def.'s Br. at 5, 16.  Therefore, the Commissioner requests that the Court affirm the decision to deny plaintiff benefits.  Id. at 21.


###    2.    ALJ'S FINDINGS

The ALJ made the following findings in his decision dated February 13, 2006:

> 1.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2.  The claimant's degenerative disc disease of the spine, mild degenerative joint disease of the left knee and possible fibromyalgia are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(c).

2

3.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.   The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.   The claimant has the following residual functional capacity: she is capable of sedentary work with a sit/stand option.

6.   The claimant is unable to perform any of her past relevant work (20 CFR § 416.965).

7.   The claimant is a "younger individual" (20 CFR § 416.963).

8.   The claimant cannot speak or understand English (20 CFR § 416.964).

9.   The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

10.   The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

11.   Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.23 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.   Examples of such jobs include work as a dowel inspector, 225 locally, 37,580 nationally; candy machine operator, 195 locally and 27,620 nationally; and final assembler, 223 locally and 37,080 nationally.

12.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(R. 24-25.)   Accordingly, the ALJ concluded that plaintiff was not eligible for SSI under the Act.

(R. 25.)

3

3.   **STANDARD OF REVIEW**

Judicial review of the Commissioner's final decision is limited, and this Court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  See Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate."  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It consists of more than a mere scintilla of evidence but may be less than a preponderance of the evidence.  Burns, 312 F.3d at 118.

"'Substantial evidence' can only be considered as supporting evidence in relationship to all other evidence in the record."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).  Therefore, despite the deference to administrative decisions in disability benefit cases, the Court "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)).  The ALJ must also comport with proper procedure and apply proper legal standards.  Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984).


4.   **DISCUSSION**

The Social Security Administration is authorized to pay SSI under the Act to persons who have a "disability."  See Barnhart v. Thomas, 124 S. Ct. 376, 378 (2003).  The Act defines "disability" in terms of the effect an impairment has on a person's ability to function in the workplace.  Id.  Specifically, a disability is established where the claimant demonstrates the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).

The SSA has promulgated regulations ("the regulations") establishing a five-step sequential evaluation to determine whether a claimant is disabled.  See Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004); 20 C.F.R. § 416.920.  At **step one**, the SSA will find that a claimant is not disabled if she is engaging in "substantial gainful activity."  20 C.F.R. § 416.920(b).  If the claimant is not working at substantial gainful activity, then the SSA proceeds to **step two** and determines whether the claimant has a "severe impairment."[2]  If so, the SSA proceeds to **step three** and determines whether the impairment meets or equals an impairment identified in Appendix 1 to Subpart P of Part 404 of the regulations, see 20 C.F.R. Pt. 404, Subpt. P, App. 1, known as the Listing of Impairments ("the listings").[3]  See 20 C.F.R. § 416.920(d).

If the claimant does not have an impairment which meets or equals one of the Listings, the inquiry proceeds to **step four**, and the SSA assesses whether the claimant has the RFC to

---

[2]Under the regulations, a claimant has a severe impairment if he or she has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).

[3]If the claimant has an impairment which meets the duration requirement and meets or equals a listed impairment, the SSA will find the claimant disabled without considering her age, education, and work experience.  20 C.F.R. § 416.920(d).  Thus, the listed impairments are presumed severe enough by the SSA to render one disabled.  See Ramirez, 372 F.3d at 550.

perform her past relevant work.[4]  Id. § 416.920(a)(4)(iv).  If the claimant can still do her previous

work, she will be found to be "not disabled."  Id.  However, if the claimant is unable to perform

her past relevant work, the SSA reaches **step five** and has the burden of demonstrating that the

claimant "can make an adjustment to other work" that exists in significant numbers in the

national economy, considering her RFC together with the vocational factors of age, education,

and work experience.  Id. § 416.920(c) and (g).  If the claimant cannot make an adjustment to

other work, the SSA will find the claimant disabled at step five.  Id. § 416.920(g); see Thomas,

124 S. Ct. at 379; Ramirez, 372 F.3d at 551.

In the present case, after reviewing the evidence in the record, the ALJ applied the

sequential analysis and reached step five, finding that "there are a significant number of jobs in

the national economy that [plaintiff] could perform."  (R. 25, Finding No. 11.)  Therefore, the

ALJ found plaintiff "not under a 'disability.'"  (R. 25, Finding No. 12.)

### 4-A: THE ALJ ERRED IN MAKING HIS RFC FINDING

Plaintiff initially challenges the ALJ's analysis of the medical evidence in the record.  See

Pl.'s Br. at 5-7.  Specifically, she argues that the ALJ did not properly assess the severity of her

physical impairments.  Id.  This argument essentially contends that the ALJ's RFC analysis was

flawed.  Upon review of the record, it appears that the ALJ's RFC analysis was improper in that

he relied on his own lay opinion to discredit plaintiff's treating physician rather than pointing to

specific medical evidence in the record that justified such a rejection.

The Court of Appeals for the Third Circuit has "repeatedly emphasized that the special

---

[4]Under the regulations, RFC is defined as "what [a claimant] can still do despite [the
claimant's] limitations."  20 C.F.R. § 416.945(a); see Ramirez, 372 F.3d at 551 n.1.

nature of proceedings for disability benefits dictates [extra] care on the part of the agency in developing an administrative record and in **explicitly** weighing **all** evidence." Fargnoli, 247 F.3d at 42 (quoting Dobrowolsky v. Califano, 606 F.2d 403, 406-407 (3d Cir. 1979)) (emphasis added); see Coleman v. Chater, 1997 WL 452192, at *3 (D. N.J. July 22, 1997).  "In the absence of such an [explanation], the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Burnett v. Commissioner of SSA, 220 F.3d 112, 121 (3d Cir. 2000) (quoting Cotter, 642 F.2d at 705).  Therefore, "unless the [Commissioner] has **analyzed *all* evidence** and has sufficiently explained the weight [he] has given to obviously probative exhibits, to say that [his] decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Secretary of HEW, 567 F.2d 258, 259 (4th Cir. 1977)) (emphasis added); see Burnett, 220 F.3d at 121; Plummer, 186 F.3d at 429; Cotter, 642 F.2d at 705.

A treating physician's assessment is generally given deference.  20 C.F.R. § 416.927(d)(2).  Therefore, under the regulations, the ALJ must "always give good reasons in [the] notice of determination or decision for the weight . . . give[n] [to the] treating source's opinion." Id.  Furthermore, an ALJ must give a treating physician's opinion "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id.  "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright **only on the basis of contradictory medical evidence**' and not due to his or her own credibility judgments,

speculation or lay opinion." Morales. 225 F.3d at 317-318 (citing Plummer, 186 F.3d at 429) (emphasis added); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Kent, 710 F.2d at 115.

Pursuant to the regulations, "[o]bjective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, **muscle spasm**, sensory deficit or motor disruption." Ortiz-Torres v. Callahan, 1997 WL 431016, at *6 (E.D. Pa. July 15, 1997) (quoting 20 C.F.R. § 404.1529(c))(emphasis added); see 20 C.F.R. 416.929(c). Accordingly, a finding of muscle spasms is considered "objective medical evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques." See id.; see also Rudolph v. Apfel, 1998 WL 42269, at *1 (E.D. Pa. Jan. 14, 1998) (citing 20 C.F.R. § 404.1529(c)(2)) ("when evaluating the claimant's testimony, the regulations require the ALJ to consider a non-exhaustive list of objective medical findings, including 'reduced joint motion' and '**muscle spasms**'") (emphasis added).

As explained above, "the medical judgment of a treating physician can be rejected only on the basis of **contradictory medical evidence."** Frankenfield, 861 F.2d at 408 (emphasis added); see also Wilson v. Apfel, 1999 WL 239068, at *1-2 (E.D. Pa. Apr. 5, 1999). In Frankenfield, the plaintiff was suffering from cardiovascular problems and major depressive disorder. Frankenfield, 861 F.2d at 406-407. The Third Circuit noted that the SSA "cannot reject th[e] medical determinations simply by having the [ALJ] make a different medical judgment." Id. at 408. The Court held that the ALJ "referred to clinical tests that are claimed to support that conclusion, but he did not address the symptoms that the treating physicians

credited, or suggest why his evaluation of the clinical tests was superior to theirs." Id.  The Court further noted that it was impermissible to reject "medically credited symptomology based on the [ALJ's] observation of the claimant at the hearing, and claimant's testimony that he took care of his personal needs, performed limited household chores, and occasionally went to church." Id.

In Wilson, the plaintiff's treating physician provided a medical assessment form that showed that plaintiff was limited in various work functions and abilities.  Wilson, 1999 WL 239068, at *1.  The ALJ rejected the opinion of the treating physician because his opinion was "not supported by his own progress notes," "appear[ed] to be based on indiscriminate acceptance of the claimant's allegations of pain," and was inconsistent with plaintiff's "daily activities." Id. at *2 (internal quotation marks omitted).  Observing that the ALJ "must accept the medical judgment of a treating physician," the Wilson Court remanded the case because the ALJ "failed to note any medical evidence which was inconsistent with [the treating physician's] medical findings," even though "the ALJ properly rejected the Plaintiff's subjective complaints of pain." Id.  The Wilson court further noted that the treating physician's RFC assessments were "the only ones in the record and the findings contained in them are consistent with the findings of [the treating physician]." Id.  Thus, where the ALJ believes a treating physician's report may be based upon the claimant's subjective representations it must be accepted if consistent with the physician's findings, unless there is contrary medical evidence.  Id.

The record  indicates that on October 6, 2004, treating physician, Dr. Efrain Torres, noted that she suffered from  "problems with **muscle spasms** in her back."  (R. 159 (emphasis added).) On December 1, 2004, he again noted that even though "[e]xtensive workups revealed she does not have rheumatologic disease," plaintiff's "complaints are related to possible [degenerative

9

joint disease] & muscle contractions." (R. 155.)  Dr. Torres diagnosed plaintiff with degenerative

joint disease and possible fibromyalgia.  (R. 155.)  The doctor completed an RFC questionnaire

noting that plaintiff's pain "constantly" impaired her "attention and concentration."  (R. 231.)  He

noted that she can only walk "2 blocks," can only sit for 30  minutes at a time, and can only stand

for 15 minutes at a time.  (R. 232.)  He opined that plaintiff must get up to walk at least every 30

minutes.  (R. 232.)  He estimated that plaintiff would need at least 3 half-hour breaks during

every work day, (R. 233), and opined that her ailments would probably cause her to be absent

from work more than four times a month, (R. 234).

Plaintiff's physical therapists noted that muscle spasms occurred up to "several times per

week."  (R. 173.)  Additionally, plaintiff saw Dr. Michael Ripchinski of the rheumatology clinic

at Lancaster General Hospital ("LGH"), who noted that he was "unsure whether her lower back

pain [was] secondary to muscle spasm or to spine disease . . . [c]ertainly the degenerative disk

disease would make it more likely as her straight leg test was negative, and she has no radiating

radicular symptoms to her pain."  (R. 227.)  After injecting plaintiff's knee with Kenalog and

Xylocaine for osteoarthritis and bursitis on September 15, 2005, Dr. Carlos Sandoval, of the

HGH rheumatology clinic, observed that plaintiff's back pain was muscular in nature.  (R. 219.)

On October 13, 2005, Dr. Jonathan Stewart also of the rheumatology clinic at LGH

reported, following examination of plaintiff, that "x-rays . . . show mild, early, degenerative

changes of the right knee without osseous abnormality or joint effusion ."  (R. 216.)  Dr. Stewart

diagnosed plaintiff with degenerative disk disease and bilateral knee pain and ordered an MRI to

determine whether or not plaintiff had a meniscal tear in her knee.  (R. 217.)  The subsequent

MRI did not reveal a meniscal tear, joint effusion, or cartilage loss, (R. 228), but x-rays did

confirm "early degenerative change" in plaintiff's knee, (R. 163).

Pursuant to the relevant regulations and case law, plaintiff's physicians' reports were supported by objective medical evidence through the findings of muscle spasms and degenerative joint and disk disease and could not be rejected unless the ALJ specifically pointed to conflicting **medical** evidence.  The ALJ may not rely on his lay opinion and disbelief of plaintiff in rejecting the treating physician's opinion.  The ALJ opined that "[t]he medical evidence indicates that the claimant has degenerative disc disease of the spine, mild degenerative joint disease of the left knee and possible fibromyalgia."  (R. 21.)  Next, the ALJ discussed some of the medical findings but failed to point to any other physician's opinion or contradictory medical evidence.  (R. 21-22.)  The ALJ merely asserted that "the objective findings . . . are minimal."  (R. 22.)

The only other person who offered an opinion regarding plaintiff's disability was state agency claims adjudicator ("DCA") B. Casselberry, who opined that plaintiff retained the RFC to perform light work.  (R. 180-84.)  The ALJ gave Casselberry's opinion limited weight as both "excessive" and "made by a non-examining source."  (R. 22.)  Under the regulations, the SSA "may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work," and notes that "other sources" can include "public and private social welfare agency personnel" or "[o]ther non-medical sources."  20 C.F.R. § 416.913(d)(3) and (4).  A DCA is clearly not a medical source.  While the regulations delineate that non-medical sources can be considered as evidence, they are clearly not enough to carry the day in light of the holding in Frankenfield that the ALJ must point to contradictory medical evidence in rejecting a treating physician.  Frankenfield, 861 F.2d at 408.

Therefore, the present case presents facts quite similar to those in Frankenfield and

Wilson.  In those cases, it was noted that the ALJ cannot make an independent evaluation of the objective medical tests and findings to determine something different from that of the treating physicians.  See Frankenfield, 861 F.2d at 408.  Even if the ALJ properly discredited plaintiff's subjective complaints of pain and found that those complaints may have affected Dr. Torres' medical opinion, he was required to point to medical evidence in the record to substantiate his beliefs.  See Wilson, 1999 WL 239068 at *2.  Additionally, if the ALJ believed that Dr. Torres' medical opinion was not supported by the objective medical tests and findings, he should have pointed to contrary medical evidence to support his opinion rather than his own lay analysis that the tests produced minimal objective evidence.  See Id.

Finally, the ALJ noted that "[w]hile the claimant may have some physical limitations, the undersigned does not find they would preclude the performance of those types of jobs identified by the [VE]."  (R. 22.)  However, "[i]n assessing RFC, the [ALJ] **must** discuss the individual's ability to perform sustained work activities in an ordinary work setting **on a regular and continuing basis (i.e. 8 hours a day, for 5 days a week, or an equivalent work schedule)."** SSR 96-8p, 61 Fed. Reg. 34474, 34478 (1996) (emphasis added) (footnote omitted); see Wallace v. Apfel, 1998 WL 967376, at *4 (E.D. Pa. Nov. 24, 1998) (remanding case for further consideration of plaintiff's RFC because ALJ failed to apply standard set out in SSR 96-8p and SSR 96-9p); see also 20 C.F.R. § 416.945(b); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); Nance v. Barnhart, 194 F. Supp.2d 302, 319 (D. Del. 2002).  This requirement is particularly significant in this case in light of Dr. Torres' opinion that plaintiff would need to take multiple prolonged breaks during each work day and that she would be absent from work at least 4 times a month.  See, e.g., Matthews, 574 F.2d at 776 (explaining that the substantial evidence

12

standard requires that all evidence must be analyzed).

The Commissioner's contention that Dr. Torres' reports "were not accompanied by explanatory reports and were recorded on check-the-box type of forms" is without merit. See Def.'s Br. at 14. This argument ignores the fact that Dr. Torres submitted numerous treatment notes that indicate plaintiff was experiencing muscle spasms, joint problems in her knee, and disc problems in her back. (R. 155, 159.) Furthermore, the rheumatology clinic at Lancaster General Hospital noted similar problems, as did plaintiff's physical therapists. (R. 163, 173, 216, 217, 219.) Therefore, evidence exists in addition to the indications made on Dr. Torres' RFC form. (R. 229-34.)

Additionally, the Commissioner argues that Dr. Torres' September 20, 2005 check-list report was properly rejected because it was prepared for another agency and thus not binding in an SSI case. See Def.'s Br. at 15. The Third Circuit has held that it is appropriate for the ALJ to discount a physician's opinion insofar as it makes determinations regarding disability based upon a statute with a different disability test. Coria, 750 F.2d at 245. However, the physician's medical findings are still relevant and are not rendered invalid solely because they were submitted to another agency with different statutory standards. Id. at 248. The Commissioner also argues that under 20 C.F.R. § 416.927 (e)(3), Dr. Torres' finding that plaintiff was "temporarily disabled" is his opinion on a dispositive issue only the Commissioner can determine. See Def.'s Br. at 15. The Commissioner is correct that the determination of disability is reserved for him, see 20 C.F.R. § 416.927(e)(1) and (3), but the treating physician's opinion is evidence that must be properly considered in making that determination.

Moreover, Dr. Torres' opinion reflected on the Pennsylvania Department of Public

13

Welfare form is not the only evidence in the record.  Plaintiff submitted reports from Dr. Torres, her MRI, her X-rays, her physical therapists, and the rheumatology clinic at Lancaster General Hospital.  Dr. Torres also filled out an RFC assessment for this specific claim.  (R. 229-34.) Therefore, this argument is without merit.

Moreover, the ALJ was required to point to credible medical evidence to support his specific RFC findings.  See, e.g., Lauer v. Apfel, 245 F.3d 700, 703-04 (8th Cir. 2001) (even if the ALJ "provided ample reasons for his decisions not to adopt the opinions of [treating and consultative physicians]," ALJ failed to point to medical evidence to support the ALJ's conclusion regarding claimant's specific RFC); see also Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."); Johnson v. Bowen, 699 F. Supp. 475, 484 (E.D. Pa. 1988) (finding that ALJ erred where he concluded that claimant retained the RFC to perform the full range of sedentary work where ALJ failed to point to medical evidence to support this conclusion).  Although the ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence," a claimant's "RFC is a medical question." Lauer, 245 F.3d at 703-04; see also  Doak, 790 F.2d at 29; Johnson, 699 F. Supp. at 484.  Since the ALJ failed to point to specific contrary medical evidence in the record to support his rejection of Dr. Torres' opinion and failed to specifically discuss plaintiff's ability to work on a regular and continuous basis, it cannot be said that his RFC analysis is supported by substantial

evidence.[5]

### 4-B: THE ALJ ERRED IN MAKING CREDIBILITY FINDINGS

Plaintiff contends that the ALJ was required to consider her subjective complaints of pain regardless of whether they were substantiated by objective medical evidence.  See Pl.'s Br. at 7. Additionally, plaintiff contends that the ALJ erroneously relied on plaintiff's daily activities to make a finding that she was not completely credible.  Id. at 7-8.  Since, among other things, the ALJ improperly discounted the treating physician's reports without pointing to contrary medical evidence and improperly relied on sporadic and transitory activities in evaluating plaintiff's subjective complaints of pain, it cannot be said that his credibility finding was supported by substantial evidence.

In analyzing plaintiff's RFC, the Commissioner considers all of a claimant's symptoms, "including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence."  20 C.F.R. § 416.929(a).  "However, statements about [a claimant's] pain or other symptoms will not alone establish that [she is] disabled; there must be medical signs and laboratory findings which show that [she has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a

---

[5]To the extent that defendant Commissioner's brief provides reasons not stated in the ALJ's decision in support of a finding that disability benefits were not warranted, the Court "cannot affirm the denial of benefits by substituting the grounds proposed by the . . . Defendant [Commissioner] for those of the ALJ."  See Reynolds v. Apfel, 1999 WL 509742, at *7-8 (E.D. Pa. July 16, 1999); see also Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); Fargnoli, 247 F.3d at 44 n.7 (quoting SEC v. Chenery Corp., 318 U.S. 80 (1943)) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

conclusion that [she is] disabled." Id.

"[W]hen the medical signs or laboratory findings show that [claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [her] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." Id. § 416.929(c).  Such an evaluation involves consideration of not only the objective medical evidence in the record, but also statements of witnesses, plaintiff's prior history, plaintiff's daily activities, and other factors. Id. § 416.929(c)(3) and (4).

In the present case, after finding that plaintiff had "degenerative disc disease of the spine, mild degenerative joint disease of the left knee and possible fibromyalgia," the ALJ went on to evaluate the intensity and persistence of plaintiff's allegations of chronic knee and back pain.  (R. 21-22.)  The ALJ stated that "objective medical findings [were] minimal," "clinical findings [were] variable," Dr. Torres' medical source statement was "based in large part upon the claimant's subjective representations," and there were some inconsistencies between Dr. Torres' reports and plaintiff's testimony.  (R. 22.)

It is the ALJ's responsibility to evaluate the credibility of plaintiff's subjective complaints.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Duncan v. Sullivan, 786 F. Supp. 466, 470 (E.D. Pa. 1992).  In making such an evaluation, "[the] ALJ must give serious consideration to [the plaintiff's] subjective complaints of pain, even where those complaints are not supported by objective [medical] evidence." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985.))  Subjective complaints of pain should be given probative weight when supported by objective medical evidence, unless

16

there is probative contrary medical evidence.  Mason, 994 F.2d at 1067-68.

In Mason, in holding that the ALJ gave improper weight to a physician's opinion, the Third Circuit found that "the ALJ's treatment of [the claimant's] complaints of pain cannot stand in light of our holding that the ALJ was not on sound ground in rejecting [the physician's] medical report." Id. at 1068.  The Mason court noted that if the proper weight was given to the physician's report, the ALJ might have evaluated the claimant's subjective complaints much differently.  Id.  "[T]he ALJ cannot be assumed to have given [the claimant's] subjective complaints of pain the substantial weight they are due - particularly since the complaints were deprived of the weight of substantiation by medical evidence." Id.  In the absence of contrary medical evidence, these complaints must be given due consideration.  Id.

The present case bares similarities because the ALJ failed to point to substantial contrary medical evidence and thus improperly rejected Dr. Torres' opinions.  As noted above, there is objective medical evidence of muscle spasms, degenerative joint problems in plaintiff's knee, and degenerative disk problems in her back.  Had the ALJ given this evidence proper analysis and weight, his evaluation of plaintiff's credibility may have been significantly different.  "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."  See SSR 96-7p, 61 Fed. Reg. 34483, 34486 (1996).  "Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms." Id.  On remand, the ALJ's finding regarding the credibility of plaintiff's subjective complaints may be effected upon further evaluation of the evidence.

17

It is also noted that the fact that plaintiff "can sit for up to 3 hours to watch TV or visit with friends," and "testified to a variety of activities of daily living" does not necessarily support a finding that plaintiff was not disabled under the Act, especially in light of the aforementioned "regular and continuing basis" requirement.  See Wallace, 1998 WL 967376, at *4; Kangas, 823 F.2d at 777; SSR 96-8p, 61 Fed. Reg. at 34478.  Upon close scrutiny of the ALJ's opinion, it is unclear which daily activities mentioned in plaintiff's testimony were being relied upon by the ALJ in making an unfavorable credibility finding.  Some of the activities that plaintiff mentioned include lifting a gallon of milk with 2 hands, vacuuming for a few minutes at a time, helping to cook with the assistance of her oldest daughter, sitting and listening to music, visiting with friends, and watching TV.  (R. 267-270.)  The ALJ mentions these activities, (R. 20), but besides noting in his RFC analysis that she can visit with friends and watch TV, the ALJ failed to articulate which of these activities refuted or discredited plaintiff's subjective complaints.  (R. 22.)

Furthermore, sporadic and transitory activities such as housework, vacations, or use of public transportation cannot be used to show an ability to engage continuously in substantial gainful activity.  See Fargnoli, 247 F.3d at 40 n.5;  Jesurum v. Secretary of HHS, 48 F.3d 114, 119 (3d Cir. 1995); Frankenfield, 861 F.2d at 408; see also Davis v. Apfel, 1999 WL 972007, at *4 (E.D. Pa. Oct. 25, 1999) (citing Kangas, 823 F.2d at 777).  "Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." Smith, 637 F.2d at 971; see also Fargnoli, 247 F.3d at 40 n.5; Frankenfield, 861 F.2d at 408.  In addition, an ALJ may not reject a treating physician's opinion due to his own "speculation or lay opinion."  See Morales, 225 F.3d at 317 (citing Plummer, 186 F.3d at 429).  On remand, after

properly analyzing and explicitly weighing all the evidence of record, the ALJ must provide

proper reasons for making a credibility finding regarding plaintiff's subjective complaints.  See

Cotter, 642 F.2d at 706-07.

      The Commissioner's brief alleges that plaintiff's "allegations were not supported by

Plaintiff's treatment history, which, to a significant degree, consisted of office visits with her

family physician, Dr. Torres, and did not involve participation in a chronic pain program or

frequent hospitalizations or emergency room visits."  See Def.'s Br. at 17.  This argument

misstates the evidence in the record and contains an improper conclusion.  For example, plaintiff

not only attended office visits with Dr. Torres, but she was also evaluated by the rheumatology

clinic at Lancaster General Hospital and attended multiple physical therapy and aquatic physical

therapy sessions in an attempt to alleviate her symptoms.  (R. 138-49, 166-77, 188-91, 206-214,

216-19, 225-27.)

      Finally, the Commissioner argues that plaintiff's testimony is inconsistent with Dr.

Torres' opinions.  See Def.'s Br. at 17.  The ALJ apparently gave great weight to the fact that he

believed plaintiff said she could do a cleaning job if it did not require heavy lifting.  (R. 22.)

There is no indication in the record that plaintiff ever admitted to such abilities.  In fact, she

began to respond by saying "[h]e said it's not (inaudible) yet."  (R. 262.)  Thus, the plaintiff's

testimony was at best inconclusive in this regard.  She testified that she wanted to work when she

moved to this country from Puerto Rico, but she never told the ALJ she could perform a

janitorial job.  (R. 262.)  Moreover, a **desire** to work and the **ability** to maintain substantial

gainful employment are two entirely different concepts.

      Additionally, the Commissioner argues that plaintiff claimed her medications upset her

19

stomach, while Dr. Torres said the opposite.  (R. 21-22, 101, 231, 272.)  On Dr. Torres' RFC

assessment, he marked "N/A" in the space that provided for side effects of plaintiff's

medications.  (R. 231.)  However, in Dr. Torres' August 1, 2005 treatment notes, he indicated

that "[d]arvocet produced nausea & vomiting and she requests an alternative."  (R. 240.)  Thus,

the inconsistency might be attributable to mistake or miscommunication, and in any event, if

necessary, further information on this subject can be acquired on remand.  In that medical

evidence supports plaintiff's subjective complaints, the ALJ should re-evaluate his credibility

findings taking into consideration the fact that he cannot rely on sporadic and transitory activities

as evidence of non-disability, and any alleged inconsistencies should be resolved on remand

through proper evaluation of all the evidence in the record and the gathering of any additional

evidence, as necessary.  On remand, the ALJ must re-evaluate the medical evidence in the record

and point to specific contrary medical findings in order to refute the treating physicians'

opinions.  The ALJ should subsequently reconsider his credibility findings in light of this

holding.

### 5.  CONCLUSION

Under the fourth sentence of 42 U.S.C. § 405(g): "The [district] court shall have power to

enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g)

("Judicial Review"); see Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001).  Here, the ALJ

failed to point to contradictory medical evidence in rejecting Dr. Torres' opinion, see

Frankenfield, 861 F.2d at 408, and improperly analyzed plaintiff's subjective complaints of pain.

See Davis, 1999 WL 972007 at *4 (citing Kangas, 823 F.2d at 777).  In addition, the ALJ failed

to specifically address the issue of whether plaintiff had the ability to perform sustained work

activities on a "regular and continuing basis."  See Wallace, 1998 WL 967376, at *4; see also

Kangas, 823 F.2d at 777; Nance, 194 F.Supp.2d at 319; 20 C.F.R. § 416.945(b); SSR 96-8p, 61

Fed. Reg. at 34478.

Since it is the function of the ALJ, not the courts, to evaluate the evidence, see Fargnoli,

247 F.3d at 42, a remand is appropriate to give the ALJ a further opportunity to properly analyze

all the evidence of record and to take any necessary additional evidence.[6]  See Cotter, 642 F.2d at

707; see also Walton v. Halter, 243 F.3d 703, 709 (3d Cir. 2001).  Accordingly, plaintiff's

motion for summary judgment should be granted insofar as plaintiff requests a remand and the

case should be remanded to the Commissioner for further proceedings consistent with this Report

and Recommendation.[7]  Since the remand would be pursuant to sentence four of 42 U.S.C. §

405(g), the final decision of the Commissioner denying benefits to plaintiff should be reversed

with a remand, and a judgment to that effect should be formally set forth "on a separate

document," pursuant to Federal Rule of Civil Procedure 58.  See Kadelski v. Sullivan, 30 F.3d

---

[6]At the hearing, well-before all of the testimony had been heard, the ALJ stated to plaintiff's counsel: "Okay counsel now what?  Got a plan, new plan, I'm sure you sort the fun things to do in your own litigation - - start scrambling would be my suggestion."  (R. 263.)  This comment is troubling in that, at the very least, it gives the appearance that the ALJ may have made a disability determination before he had an opportunity to hear **all** the evidence.  Of course, to that extent, comments such as these should be avoided on remand and the ALJ should take special care to consider all the evidence before rendering a final decision.

[7]Upon review of the transcript, it is unclear how active a role the interpreter played at the hearing.  On remand, a Spanish-speaking interpreter should be fully-utilized, and it should be made clear on the record that the interpreter has made all questions and testimony understood to both plaintiff and the ALJ.

399, 402 (3d Cir. 1994); see also Shalala v. Schaefer, 113 S. Ct. 2625, 2629 (1993).

My Recommendation follows.

## RECOMMENDATION

**AND NOW**, this 22nd day of October, 2007, upon consideration of plaintiff's motion for summary judgment and defendant's response to plaintiff's request for review, for the reasons given in the accompanying Report, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED** insofar as plaintiff requests a remand, and that the case be **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.  A Judgment **REVERSING** the Commissioner's final decision with a **REMAND** should therefore be entered.

/s/ L. Felipe Restrepo
L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE